UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            v.                          )        Criminal No. 10-0276 (PLF)
                                        )
ANTHONY T. ROSS,                        )
                                        )
            Defendant.                  )
_____ )


OPINION

        This matter is before the Court on the defendant's motion to dismiss the

indictment against him. The Court heard oral argument on this motion on February 18, 2011,

and took it under advisement. Upon consideration of the parties' papers, the oral arguments

presented by counsel, the relevant legal authorities, and the entire record in this case, the Court

will deny the defendant's motion to dismiss.[1]


I.  BACKGROUND

        On November 23, 1999, following a non-jury trial in the Superior Court of the

District of Columbia, defendant Anthony T. Ross was convicted of one count of misdemeanor

sexual abuse. Mr. Ross, at the time of his offense a thirty-year-old teacher at Archbishop High

School in Washington, D.C., was found to have engaged in sexual relations with a

fifteen-year-old student. Opp. at 1; see Mot. at 1. Mr. Ross was sentenced to a term of 180 days

_____

        [1]       The papers reviewed in connection with the pending motion include: the
indictment ("Indictment"); the defendant's motion to dismiss the indictment and memorandum of
points and authorities in support thereof ("Mot."); the government's opposition to defendant's
motion to dismiss the indictment ("Opp."); the defendant's reply to the government's opposition
("Reply"); and the defendant's supplement to his motion to dismiss the indictment ("Supp. to
Mot.").

in jail, the execution of which was suspended except for 120 days of work release, followed by eighteen months of probation. Opp. at 1; Mot. at 1. Furthermore, under District of Columbia law, Mr. Ross was required to register as a sex offender for a period of ten years following his release. Mot. at 1 (citing D.C. Code § 22-4001); <u>see</u> Opp. at 1.

On the date of his conviction, Mr. Ross was provided with a "Certification of Sex Offender And Notice Order" that stated: "YOU ARE HEREBY GIVEN NOTICE THAT pursuant to the Sex Offender Registration Emergency Act of 1999 . . . you are certified by this Court as a SEX OFFENDER." Opp. at 1-2 (emphasis in original). On December 13, 2000, Mr. Ross signed a notice of his duty to register as a sex offender for ten years, expressly acknowledging the following:

> I understand that I have a duty to report 1) any changes of home, work or school addresses; 2) any change in motor vehicle information, or 3) any significant changes in physical appearance to the Agency within 3 days. Changes in registration information must be provided to CSOSA Sex Offender Registration Office . . . . I am also obligated to provide verification of registration information to the Agency, upon request, which will be at internals no greater than quarterly if my classification is <u>A</u> or annually if my classification is <u>B or C</u>.

<u>Id</u>. at 2 (emphasis in original). Mr. Ross' sex offender classification was within the "<u>B</u>" category, thereby requiring annual verification of registration. <u>Id</u>.

On January 18, 2002, February 26, 2003, and September 29, 2006, Mr. Ross signed "Sex Offender Verification Forms." Opp. at 2. He apparently did not sign such forms in calendar years 2004 and 2005. These forms stated the following:

> The D.C. Sex Offender Registration Act mandates that every person convicted of a sexually violent offense, shall register with the Court Services and Offender Supervision Agency and verify

relevant information every three months. Every other sex offender
must register and provide verification on an annual basis.

Id. Directly above Mr. Ross' signature on each of these forms was the following attestation:

"I certify the information provided on this form is complete and accurate and I am aware of my

responsibility to provide notice to the Court Services and Offender Supervision Agency within

3 days of changing my address or other registration information." Id.

Sometime between January 2009 and September 2010, Mr. Ross moved from the

District of Columbia to Ohio. See Opp. at 2; Indictment at 1. The government alleges that Mr.

Ross neither notified the District of Columbia of his move, nor registered as a sex offender in

Ohio. Opp. at 2. The government further alleges that Mr. Ross used a false date of birth and a

false social security number while in Ohio, in order to hide the fact that he was a convicted sex

offender. Id. at 2-3.

On October 7, 2010, a grand jury in the District of Columbia returned a one count

indictment against Mr. Ross, charging him with the failure to register under the Sex Offender

Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 et seq., in violation of

18 U.S.C. § 2250(a). Indictment at 1. The Indictment charges activity in violation of SORNA

"[b]etween on or about January 2009 and on or about September 2010, within the District of

Columbia and elsewhere . . . ." Id. Mr. Ross was arrested two days after the return of his

indictment, on October 9, 2010, in Ohio. Opp. at 3.

Mr. Ross now moves to dismiss the Indictment on eight separate grounds. First,

Mr. Ross asserts that the Attorney General's interim regulation, 28 C.F.R. § 72.3, which states

that SORNA applies retroactively to offenders such as Mr. Ross whose qualifying offense was

committed prior to SORNA's enactment, was issued in violation of the Administrative Procedure Act ("APA"). Mot. at 3. Second, Mr. Ross asserts that he was "unable" to register under SORNA because he was unable to register under existing District of Columbia law. Id. Third, Mr. Ross asserts that SORNA is not applicable to him because the District of Columbia has yet to implement SORNA. Id. Fourth, Mr. Ross asserts that SORNA is not applicable to him because he was "unable" to "initially register" under SORNA. Id. at 4. Fifth, Mr. Ross asserts that Congress improperly delegated the legislative function of determining the retroactivity of SORNA to the Attorney General, in violation of the non-delegation doctrine. Id. Sixth, Mr. Ross asserts that retroactive application of SORNA violates the *Ex Post Facto* Clause. Id. Seventh, Mr. Ross asserts that application of SORNA to him violates the Due Process Clause. Id. And eighth, Mr. Ross asserts that SORNA is an unlawful exercise of federal power under the Commerce Clause. Id.

## II. SORNA OVERVIEW

### A. The Statute, the Interim Regulation, the Preliminary and Final SMART Guidelines, and the Final Rule

"Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification." Carr v. United States, 130 S. Ct. 2229, 2232 (2010). "In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted [SORNA] as part of the Adam Walsh Child Protection and Safety Act, PUB. L. NO. 109-248, TIT. I, 120 STAT. 590." Id.; see 42 U.S.C. § 16901 (Congress enacted

SORNA to "establish[] a comprehensive national system for the registration of [sex] offenders . . . .").

Section 16913 of Title 42 provides, in relevant part, that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). As part of "[k]eeping the registration current," a sex offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." Id. § 16913(c). In addition, Section 16913 provides the requirements for sex offenders registering for the first time. See id. § 16913(b). And Section 16913 further provides that

> [t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before [the enactment of SORNA on July 27, 2006] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section [the initial registration provision].

Id. § 16913(d).

It is a federal criminal offense to violate SORNA's registration requirements. Carr v. United States, 130 S. Ct. at 2232; see 18 U.S.C. § 2250(a). Any person who (1) "is required to register under [SORNA]," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration as required by [SORNA]," shall be fined or imprisoned "not more than 10 years, or both." 18 U.S.C. § 2250(a); see United States v. Cotton, Criminal No. 10-0126, 2011 WL 180196, at *1 (D.D.C. Jan. 20, 2011).

SORNA was enacted, effective immediately, on July 27, 2006.  United States v.

Cotton, 2011 WL 180196, at *1.  On February 28, 2007, the Attorney General issued an

immediately effective interim regulation for the purpose of "specif[ying] the applicability of the

requirements of [SORNA] to sex offenders convicted prior to the enactment of that Act."

28 C.F.R. § 72.1.  This interim regulation expressly states that SORNA applies "to all sex

offenders, including sex offenders convicted of the offense for which registration is required

prior to the enactment of that Act."  28 C.F.R. § 72.3.  In other words, under this regulation,

SORNA applies retroactively to sex offenders with pre-SORNA convictions like Mr. Ross.

See id.  In promulgating this regulation, the Attorney General "did not provide notice of

proposed rulemaking, 5 U.S.C. § 553(b), or allow a 30-day [comment] period before the rule

became effective, 5 U.S.C. § 553(d), as required by the [APA]."  United States v. Cotton,

2011 WL 180196, at *2.  "Instead, he invoked the 'good cause' exception of the APA for these

requirements."  Id. (citing 5 U.S.C. § 553(b)(3)(B) & (d)(3); 72 Fed. Reg. 8894, 8896-97 (2007)).

Three months later, on May 30, 2007, the Attorney General published proposed

comprehensive guidelines for SORNA, referred to as the "SMART" guidelines after the Office of

Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking.  See

72 Fed. Reg. 30,210 (May 30, 2007).  These preliminary SMART guidelines also state that

SORNA applies retroactively:

> The applicability of the SORNA requirements is not limited to sex
> offenders whose predicate sex offense convictions occur following
> a jurisdiction's implementation of a conforming registration
> program.  Rather, SORNA's requirements apply to all sex
> offenders, including those whose convictions predate the
> enactment of the Act.

Id. at 30,212. Comments on these preliminary SMART guidelines were accepted through August 1, 2007. Id. at 30,210.

On July 2, 2008, after considering comments submitted during the notice and comment period, the Attorney General issued the final SMART guidelines. See 73 Fed. Reg. 38,030 (July 2, 2008). He specified that these final guidelines carried out the statutory directive "to issue guidelines to interpret and implement SORNA," and further stated that these final guidelines would "provide guidance and assistance to covered jurisdictions — the 50 States, the District of Columbia, the principal U.S. territories, and Indian tribal governments — in implementing the SORNA standards in their registration and notification programs." Id. at 38,044. Like the Attorney General's interim regulation and the preliminary guidelines, these final guidelines expressly state that SORNA applies retroactively:

> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment.

Id. at 38,046; see id. at 38,063 ("SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs."). These final guidelines stated that their effective date was July 8, 2008. Id. at 38,030. Under 5 U.S.C. § 553(d), however, these guidelines became effective not on July 8, 2008, but rather on August 1, 2008 — thirty days after their publication. See United States v. Utesch, 596 F.3d 302, 307, 311 & n.8 (6th Cir. 2010); United States v. Cotton, 2011 WL 180196, at *13.

On December 29, 2010, the Attorney General issued a final rule, effective January 28, 2011, that "finaliz[ed] [the] interim [regulation] specifying that the requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required before the enactment of that Act." 75 Fed. Reg. 81,849, 81,850. The Attorney General noted that the final SMART guidelines, like the interim regulation, "state that SORNA applies to all sex offenders regardless of when they were convicted . . . ." Id. Nevertheless, the December 29, 2010 "rulemaking . . . aim[ed] to eliminate any possible uncertainty or dispute concerning the scope of SORNA's application by finalizing the interim [regulation]." Id.[2]

## B. Circuit Splits Regarding SORNA's Retroactive Application

As discussed, it is a federal criminal offense to violate SORNA's registration requirements: Any person who (1) "is required to register under [SORNA]," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration as required by [SORNA]," shall be fined or imprisoned "not more than 10 years, or both." 18 U.S.C. § 2250(a). In Carr v. United States, the Supreme Court held that the three elements of this offense are to "be read sequentially," meaning that "the statutory sequence begins when a person becomes subject to SORNA's registration requirements. The person must then travel in

---

[2]     In describing SORNA's regulatory framework, the case law occasionally makes reference to "regulations," "rules," and "guidelines," interchangeably. See, e.g., United States v. Johnson, 632 F.3d 912, 917 (5th Cir. 2011) (describing the final SMART guidelines as "final SORNA regulations"); see also United States v. Utesch, 596 F.3d 302, 312 n.10 (6th Cir. 2010). For purposes of clarity and consistency, the Court uses the terms "interim regulation," "preliminary SMART guidelines," "final SMART guidelines," and "final rule," as specifically described in this Opinion.

8

interstate commerce and thereafter fail to register." Carr v. United States, 130 S. Ct. at 2235. "In other words, Carr clarified that '[o]nce a person becomes subject to SORNA's registration requirements, which can occur only after the statute's effective date, that person can be convicted under § 2250 if he thereafter travels and then fails to register.'" United States v. Cotton, 2011 WL 180196, at *2 (quoting Carr v. United States, 130 S. Ct. at 2236) (alteration in original). "Precisely when a sex offender . . . with a pre-SORNA conviction" — like Mr. Ross — "'becomes subject to SORNA's registration requirements,'" however, is a matter that has been disputed in federal courts throughout the country. Id. (quoting Carr v. United States, 130 S. Ct. at 2234 n.2).

> As the Supreme Court has observed:
>
> There is a . . . conflict among the Courts of Appeals as to when SORNA's registration requirements became applicable to persons convicted of sex offenses prior to the statute's enactment. Several Circuits, including the Seventh, have taken the position that the Act did not apply to such sex offenders until the Attorney General provided for their inclusion by issuing [the] interim regulation . . . on February 28, 2007. . . . Other Circuits have held that persons with pre-SORNA sex-offense convictions became subject to the Act's registration requirements upon the statute's enactment in July 2006.

Carr v. United States, 130 S. Ct. at 2234 n.2 (internal citations omitted); see United States v. Johnson, 632 F.3d 912, 922 (5th Cir. 2011) ("Five circuits have held that the Act did not apply to offenders with pre-enactment convictions until the Attorney General issued the [interim] regulation. . . . Yet four other circuits have held that the language of the statute itself applied the provisions to persons with pre-SORNA sex-offense convictions.") (internal citations omitted).

In this case, the government does not advance the argument that SORNA applied retroactively upon its enactment on July 27, 2006; accordingly, the Court will not address that question. Instead, the parties focus their briefing on the validity of the Attorney General's interim regulation issued on February 28, 2007, 28 C.F.R. § 72.3, <u>see</u> Mot. at 9-19; Opp. at 7-19, which expressly provides that SORNA's requirements "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3. Mr. Ross argues that the Attorney General's interim regulation "violates the [APA] . . . because it was promulgated without a required 30-day notice and comment period." Mot. at 3. The government disagrees and argues that the interim regulation "is valid because the Attorney General properly found good cause for dispensing with the notice, comment, and publication requirements of the APA." Opp. at 7.

The question whether the Attorney General's interim regulation "was properly promulgated . . . has also divided the Circuits." <u>Carr v. United States</u>, 130 S. Ct. at 2234 n.2; <u>see</u> <u>Cotton v. United States</u>, 2011 WL 180196, at *3. The Fourth and Eleventh Circuits have found that the Attorney General properly invoked the good cause exception and that the Attorney General's interim regulation therefore was valid under the APA. <u>See</u> <u>United States v. Gould</u>, 568 F.3d 459, 469-70 (4th Cir. 2009); <u>United States v. Dean</u>, 604 F.3d 1275, 1281-82 (11th Cir. 2010).[3] The Sixth and Ninth Circuits, by contrast, have found that the Attorney General failed to establish good cause for waiving the notice and comment period and that the interim regulation therefore violated the APA. <u>United States v. Cain</u>, 583 F.3d 408, 422-23 (6th Cir. 2009); <u>United</u>

---

[3]     The Seventh Circuit also has upheld the Attorney General's interim regulation — though it did so without analysis, dismissing the defendant's APA argument as "frivolous." <u>See</u> <u>United States v. Dixon</u>, 551 F.3d 578, 583 (7th Cir. 2008).

States v. Utesch, 596 F.3d at 308-10; United States v. Valverde, 628 F.3d 1159, 1168 (9th Cir. 2010). And the Fifth Circuit similarly has concluded that the Attorney General "did not have good cause for failing to publish the rule thirty days before its effective date nor did good cause exist to bypass the notice-and-comment requirements." United States v. Johnson, 632 F.3d at 930. But unlike the Sixth and Ninth Circuits, the Fifth Circuit found "that the Attorney General's APA violations were harmless error." Id. at 933.

Neither the Supreme Court nor the Court of Appeals for the District of Columbia Circuit has ruled on this issue.[4] In this circuit, however, Judge Bates, in United States v. Cotton, agreed "with the reasoning of the Sixth and Ninth Circuits, under which the interim rule is invalid . . . ." United States v. Cotton, 2011 WL 180196, at *14. Judge Bates rejected the view that the APA violations were harmless error. Id. at 13.

## III. DISCUSSION

### A. Validity and Applicability of the Final SMART Guidelines

Since the government does not advance the argument that SORNA applied retroactively upon its enactment, the first question before the Court "is whether there exists any valid regulation [or guidelines] promulgated by the Attorney General pursuant to § 16913(d) that subjected [Mr. Ross] to SORNA during the period covered by his indictment," United States v. Utesch, 596 F.3d at 308 — that is, "[b]etween on or about January 2009 and on or about

---

[4] The Supreme Court recently granted a writ of certiorari in Reynolds v. United States, 131 S. Ct. 1043 (2011), on the question whether the petitioner "ha[s] standing under . . . [SORNA] to raise claims concerning the Attorney General's interim rule and [whether] review . . . is needed to resolve the circuit conflict[.]" Petition for Writ of Certiorari at i, Reynolds v. United States, No. 10-6459.

September 2010." Indictment at 1. There are three possible candidates: "(1) the February 28, 2007 interim regulation, (2) the preliminary SMART guidelines issued on May 30, 2007, and (3) the final SMART guidelines issued on July 2, 2008." United States v. Utesch, 596 F.3d at 308; see United States v. Valverde, 628 F.3d at 1164; United States v. Cotton, 2011 WL 180196, at *13.[5] The Court concludes that it "need not reach the precise issue on which the Circuits [are in] conflict, namely whether the Attorney General had good cause to issue" the February 28, 2007 interim regulation. United States v. Alvarado-Aceves, Criminal No. 09-2720, 2010 WL 730361, at *3 (S.D. Tex. Mar. 2, 2010). Nor need it decide the validity or applicability of the preliminary SMART guidelines. A determination on these issues "is neither necessary nor germane" to Mr. Ross, id., because the period of his indictment falls well after the issuance of the procedurally valid final SMART guidelines, expressly providing that SORNA applies "to all sex offenders, including those whose convictions predate SORNA's enactment." 73 Fed. Reg. 38,030, 38,046; see id. at 38,063; see also United States v. Utesch, 596 F.3d at 310-11; United States v. Valverde, 628 F.3d at 1169.

The final SMART guidelines "complied with the APA's procedural requirements . . . ." United States v. Valverde, 628 F.3d at 1164; see United States v. Utesch, 596 F.3d at 310 ("[T]he comprehensive SMART guidelines . . . were promulgated according to notice and comment procedures."); United States v. Cotton, 2011 WL 180196, at *13. As the Sixth Circuit stated:

---

[5] The December 29, 2010 final rule is not a possible candidate because it was effective on January 28, 2011, well after the time charged in Mr. Ross' Indictment.

> The preliminary [SMART] guidelines, which included a provision
> making SORNA retroactive . . . , were published on May 30, 2007
> and stated that comments would be accepted until August 1,
> 2007. . . . The Attorney General then issued the final SMART
> guidelines on July 2, 2008, responding to the comments received
> and maintaining that SORNA would be applied retroactively. . . .
> [T]his process is precisely what the APA requires.

United States v. Utesch, 596 F.3d at 310 (internal citations omitted).  The final SMART

guidelines were effective thirty days after their publication, that is, on August 1, 2008.  United

States v. Cotton, 2011 WL 180196, at *13 (citing United States v. Utesch, 596 F.3d at 307);

see United States v. Valverde, 628 F.3d at 1169.

      During oral argument, counsel for Mr. Ross asserted that the final SMART

guidelines did not make SORNA applicable to pre-SORNA offenders like him, because these

guidelines are solely instructions to jurisdictions on how to implement SORNA — not rules or

regulations requiring registration by offenders whose convictions pre-date SORNA.  Mr. Ross

restated this argument in the recent supplement to his motion: "[T]he SMART Guidelines cannot

be considered the effective date for retroactive application of SORNA because that was not the

stated purpose of the SMART Guidelines.  Instead, the Guidelines were issued to provide the

States with guidance in implementing SORNA."  Supp. to Mot. at 2 (citing 73 Fed. Reg. 38,030,

38,044).

      The Court disagrees.  Although the final SMART guidelines do "provide guidance

and assistance to covered jurisdictions . . . in implementing SORNA standards in their

registration and notification programs," 73 Fed. Reg. 38,030, 38,044, they also expressly "repeat

that 'SORNA applies to all sex offenders, including those convicted of their registration offenses

prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the

SORNA requirements into their programs.'" Kennedy v. Allera, 612 F.3d 261, 267 (4th Cir. 2010) (quoting 73 Fed. Reg. 38,030, 38,063); see United States v. Utesch, 596 F.3d at 310. These "comprehensive" guidelines, United States v. Utesch, 596 F.3d at 310, clearly have (at least) two purposes: (1) to provide guidance and assistance to jurisdictions; and (2) to impose requirements on sex offenders whose convictions predate SORNA by specifying that SORNA applies retroactively. These procedurally valid final SMART guidelines complied with the APA and "carry the force of law." Id.; see United States v. Valverde, 628 F.3d at 1164. And they were effective on August 1, 2008 — well before Mr. Ross allegedly violated SORNA between January 2009 and September 2010. See Indictment at 1.

Counsel for Mr. Ross asserted, in the alternative, that even if the Court concluded that these final SMART guidelines did make SORNA applicable to pre-SORNA offenders, by their terms the guidelines impose a limitation: retroactivity is not triggered until the relevant jurisdiction implements SORNA. See Supp. to Mot. at 2 (citing 73 Fed. Reg. 38,030, 38,063-64). Mr. Ross' argument focuses on the following language in the final SMART guidelines:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation . . . jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible . . . . Jurisdictions are . . . authorized to phase in SORNA registration for such sex offenders in conformity with the appearance schedule of SORNA § 116. *In other words, sex offenders in these existing sex offender populations who cannot be registered within the normal SORNA time frame (i.e., before release from imprisonment or within three business days of sentencing for the registration offense) must be registered by the jurisdiction when it implements the SORNA requirements . . . .*

73 Fed. Reg. 38,030, 30,063-64 (emphasis added). Although Mr. Ross acknowledges that the final SMART guidelines "do state that SORNA applies to offenders whose convictions predate SORNA," Supp. to Mot. at 2, Mr. Ross interprets the language quoted above to mean that the final SMART guidelines make SORNA retroactive to offenders with pre-SORNA convictions only after the relevant jurisdiction implements the SORNA requirements into its system. See id. at 2-3. Because the District of Columbia has not yet implemented the requirements of SORNA, Mr. Ross continues, SORNA does not apply retroactively to him.

Again, the Court disagrees. The plain text of the final SMART guidelines refutes Mr. Ross' argument: "SORNA applies to *all sex offenders*, including those convicted of their registration offenses prior to the enactment of SORNA *or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs*." 73 Fed. Reg. 38,030, 38,063 (emphasis added); see also id. at 38,046; United States v. Utesch, 596 F.3d at 310-11; United States v. Valverde, 628 F.3d at 1169; United States v. Cotton, 2011 WL 180196, at *13. SORNA and the SMART guidelines deal both with a jurisdiction's duty to implement the statute and, separately, with a sex offender's duty to register. The offender's duty to register is not contingent on the jurisdiction's implementation. Mr. Ross "overlooks the fact that the section of the [final SMART guidelines] on which he relies addresses the duty of *jurisdictions* to identify and register sex offenders who cannot be registered under the ordinary initial registration procedure. That section does nothing to negate [Mr. Ross'] independent duty as a sex offender to register under SORNA." Kennedy v. Allera, 612 F.3d at 267. The Court therefore rejects Mr. Ross' challenge to the retroactive application of SORNA, because — well before the period charged in Mr. Ross' Indictment — the procedurally valid final SMART guidelines expressly

provided that "SORNA would be applied retroactively" to him.  United States v. Utesch, 596

F.3d at 310; see also United States v. Cotton, 2011 WL 180196, at *13.[6]

### B.  Duty to Register Under District of Columbia Law

In his motion, Mr. Ross initially argued that, even if SORNA applies retroactively,

he "was 'unable' to register under SORNA because [he] had no duty to register under existing

District of Columbia law, during the time period charged in the indictment."  Mot. at 19.  The

government disagrees, asserting that "[u]nder D.C. law, [Mr. Ross] did have a duty to register.

22 D.C. Code § 4001 et seq. clearly articulates this duty."  Opp. at 19.  In his reply, Mr. Ross

acknowledges that this is not a question before the Court at this stage; rather, it is a jury question.

See Reply at 4.  The Court therefore will not address it.

### C.  Implementation of SORNA by the District of Columbia

Mr. Ross argues that he has no duty to register under SORNA because the District

of Columbia has yet to implement the Act.  See Mot. at 20.  The government does not dispute

that the District of Columbia "has yet to fully implement SORNA."  Opp. at 20.  It argues,

however, that Mr. Ross "nevertheless has a duty under federal law to maintain his sex offender

---

[6]      In the supplement to his motion to dismiss, Mr. Ross raises a new argument: he
asserts that the recent December 29, 2010 final rule "would have been completely unnecessary if
the SMART guidelines constituted a rule applying SORNA retroactively."  Supp. to Mot. at 4.
The Court disagrees.  In issuing the December 29, 2010 rule, the Attorney General noted that in
United States v. Utesch the Sixth Circuit had held that the final SMART guidelines "are,
independently of the interim rule, a valid final rule providing that SORNA applies to all sex
offenders, including those whose convictions predate SORNA."  75 Fed. Reg. 81,849, 81,850.
The Attorney General specified that the December 29, 2010 final rule "reflects no disagreement
with [the Sixth Circuit's conclusion] but rather aims to eliminate any possible uncertainty or
dispute concerning the scope of SORNA's application by finalizing the interim rule."  Id.

registration with the jurisdictions in which he resides" and asserts that it is sufficient that the

District of Columbia "did have a procedure in place" — albeit, not the SORNA procedure —

"for sex offenders like [Mr. Ross] to register."  Id.

Mr. Ross' argument once again "'depends on a construction of SORNA that links

the requirement imposed on the States to implement the registration standards mandated by

SORNA in a manner that would have the requirement imposed on individuals be dependent on

the State's implementation.'"  United States v. Cotton, 2011 WL 180196, at *14 (quoting United

States v. Gould, 568 F.3d at 463).  The Court agrees with Judge Bates that "SORNA's language

does not provide that linkage."  Id.  As he explained:

> A sex offender's duty to register under SORNA is not
> contingent on a jurisdiction's implementation of SORNA.  See
> United States v. Gould, 568 F.3d at 465 ("[T]he requirement
> imposed on individuals to register is independent of the
> requirement imposed on the States to implement the enhanced
> registration and notification standards of SORNA."); United States
> v. Hinckley, 550 F.3d 926, 939 (10th Cir. 2008) (rejecting
> defendant's argument that it was impossible for him to register
> under SORNA because the state had not passed legislation
> implementing SORNA); United States v. Dixon, 551 F.3d at 582
> (same).

> The structure of SORNA's requirements indicates that the
> sex offenders' individual duty to register and the State's duty to
> enhance its registries and standards as mandated by the Act are
> separate.  See United States v. Gould, 568 F.3d at 464.  As the
> Attorney General's SMART Guidelines explain, "[s]ome of the
> provisions in SORNA are formulated as *directions to sex
> offenders*, including those appearing in sections 113(a)-(b). . . .
> Other SORNA provisions are cast as *directions to jurisdictions*
> . . . ." 73 Fed. Reg. at 38048 (emphasis added).  Furthermore, the
> SMART Guidelines "emphasize, with greater particularity, that
> 'SORNA applies to all sex offenders, including those convicted of
> their registration offenses prior to the enactment of SORNA or
> prior to particular jurisdictions' incorporation of the SORNA

> requirements into their programs.'" United States v. Gould,
> 568 F.3d at 465 (quoting 73 Fed. Reg. at 38063). "Accordingly,
> SORNA's requirement that a sex offender register applies whether
> registration would be accomplished through preSORNA
> registration facilities or under SORNA-complaint programs." Id.
> at 465-66. [The defendant's] duty to register under SORNA
> existed, then, whether or not D.C. had implemented SORNA's
> enhanced registration and notification standards.

United States v. Cotton,  2011 WL 180196, at *15 (emphasis in original); see United States v.

Hester, 589 F.3d 86, 93 (2d Cir. 2009) ("That SORNA also requires jurisdictions to update and

improve their registration programs, and that New York and Florida had not yet met those

administrative requirements, does not excuse [the defendant's] failure to meet the registration

requirements that SORNA imposes on individual sex offenders and to register with the programs

that did exist."); United States v. Brown, 586 F.3d 1342, 1349 (11th Cir. 2009) ("[A] sex

offender is not exempt from SORNA's registration requirements merely because the jurisdiction

in which he is required to register has not yet implemented SORNA."); see also United States v.

Heth, 596 F.3d 255, 258 (5th Cir. 2010) ("SORNA imposes a separate and distinct requirement

on the states to implement SORNA-compliant sex offender registries within a specified time

after the Act's enactment . . . .").

      Upon his Superior Court conviction in 1999, Mr. Ross was given notice that,

"pursuant to the Sex Offender Registration Emergency Act of 1999 . . . [he was] certified . . . as a

SEX OFFENDER." Opp. at 2 (emphasis in original).  He then acknowledged on four separate

occasions his duty to register as a sex offender and to report any change in address within three

days to the District of Columbia Court Services and Offender Supervision Agency.  See id.

Furthermore, Mr. Ross does not dispute that the District of Columbia maintained a sex offender

registry during the relevant time period.  See Opp. at 19; Reply at 3-4; D.C. Code § 22-4001

et seq.; see also Carr v. United States, 130 S. Ct. at 2239 n.7 (By the time of SORNA's

enactment, "'every State[, the District of Columbia, and the Federal Government] had enacted

some' type of registration system.") (quoting Smith v. Doe, 538 U.S. 84, 90 (2003)); United

States v. Whaley, 577 F.3d 254, 259 (5th Cir. 2009).  Mr. Ross therefore could have registered as

a sex offender through the District of Columbia sex offender registry.  See United States v.

Cotton, 2011 WL 180196, at *15.

### D.  Initial Registration Under SORNA

Mr. Ross next argues that he was unable to initially register under SORNA

because his conviction pre-dates SORNA's registration and notification requirements.  See Mot.

at 23.  Section 16913(b) of Title 42 provides:

> The sex offender shall initially register — (1) before completing a
> sentence of imprisonment with respect to the offense giving rise to
> the registration requirement; or (2) not later than 3 business days
> after being sentenced for that offense, if the sex offender is not
> sentenced to a term of imprisonment.

42 U.S.C. § 16913(b).  Mr. Ross contends that because he "was released from prison prior to

SORNA's enactment in July 2006 . . . . , he is not covered by the 'initial registration' provision

of § 16913(b)."  Mot. at 23.

The Court disagrees.  Mr. Ross' argument

> fails because, as a threshold matter, he does not fall within the
> category of sex offenders "unable" to "initially register" described
> in section 16913(b).  That section applies to sex offenders who do
> not currently have *any* registration requirement: sex offenders
> currently in prison or yet to be sentenced.  See 42 U.S.C.
> § 16913(b).  In contrast, [Mr. Ross] is a sex offender with a current

19

registration obligation who must "register, and keep [his] registration current" under state and federal law, covered by the registration requirements described under sections 16913(a) and (c). See United States v. May, 535 F.3d 912, 919 (8th Cir. 2008). "A sex offender is able to register under SORNA if he is able to register by means of an existing state registration facility." United States v. Gould, 568 F.3d at 466; see 73 Fed. Reg. at 38063 ("Jurisdictions are specifically required to register such sex offenders if they remain in the [state or other jurisdiction's] system as prisoners, supervisees, or registrants."). Hence, [Mr. Ross] is "able" — indeed, he has a duty — to register and keep his registration current under D.C. law, and he is therefore "able" to register under SORNA.

United States v. Cotton, 2011 WL 180196, at *16 (emphasis in original).

### E. Constitutional Arguments

#### 1. Non-Delegation Doctrine

Mr. Ross argues that SORNA is unconstitutional because, "[b]y delegating to the Attorney General the broad authority to specify SORNA's applicability to offenders convicted before the passage of the Act, before SORNA's implementation, and before they are initially able to register, Congress violated the non-delegation doctrine." Mot. at 25. Although Congress "may delegate authority to the executive to promulgate rules and create law," United States v. Cotton, 2011 WL 180196, at *16, the Supreme Court has established that it may do so "only when Congress provides an 'intelligible principle' to guide the delegated party." Id. (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)). A non-delegation challenge to a law will fail "if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946). As this Court has observed, "[o]nly twice in [the Supreme

Court's] history, and not since 1935, has [it] invalidated a statute on the ground of excessive delegation of legislative authority." Milk Industry Found. v. Glickman, 949 F. Supp. 882, 889 (D.D.C. 1996) (internal quotations and citation omitted); see United States v. Ambert, 561 F.3d 1202, 1213 (11th Cir. 2009).

> The Court is
>
> satisfied that Congress has provided the Attorney General with "intelligible principles" in [SORNA]. Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914, and 2250 that constrict the Attorney General's discretion to a narrow and defined category.

United States v. Ambert, 561 F.3d at 1213. Thus, "Congress's delegation to the Attorney General to determine the retroactive applicability of SORNA is well within the limits of possible delegation." United States v. Cotton, 2011 WL 180196, at *17; see United States v. Whaley, 577 F.3d at 264 ("The delegation to the Attorney General to determine the retroactive applicability of SORNA is well within the limits of permissible delegation."); United States v. Ambert, 561 F.2d at 1213-14.

### 2. *Ex Post Facto* Clause

Mr. Ross argues that retroactive application of SORNA violates the *Ex Post Facto* Clause. Mot. at 27. This Clause "prohibits punishment of a defendant 'for an act which was not punishable at the time it was committed.'" United States v. Gould, 568 F.3d at 466 (quoting Weaver v. Graham, 450 U.S. 24, 28 (1981)). Mr. Ross contends that SORNA does just that: "the

retroactive application of SORNA increases [his] punishment for an offense allegedly committed seven years prior to the enactment of SORNA . . . ." Mot. at 27.

In Smith v. Doe, 538 U.S. 84 (2003), the Supreme Court rejected an *ex post facto* challenge to Alaska's sex offender registration law, holding that the law did not constitute an unconstitutional retroactive punishment. See Smith v. Doe, 538 U.S. at 105-06. Smith set forth the established framework for analyzing a challenge under the *Ex Post Facto* Clause:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. . . . If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. . . . Because we ordinarily defer to the legislature's stated intent, . . . only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty . . . .

Smith v. Doe, 538 U.S. at 92 (internal quotations and citations omitted) (alteration in original).

Congress expressly stated that its purpose in enacting SORNA was "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of those offenders . . . ." 42 U.S.C. § 16901. SORNA's stated intent therefore "is civil and non-punitive . . . ." United States v. Cotton, 2011 WL 180196, at *17; see United States v. Young, 585 F.3d 199, 205 (5th Cir. 2009) (SORNA's "express language indicates that Congress sought to create a civil remedy."). Accordingly, Mr. Ross "must present the 'clearest proof' that either the purpose or the effect of the [statute] is in fact so punitive as to negate its civil intent." United States v. Young, 585 F.3d at 205.

The Court agrees with the weight of authority that holds that Mr. Ross "cannot by 'clearest proof' override the stated intent of Congress" in enacting SORNA.  United States v. Cotton, 2011 WL 180196, at *19; see United States v. Young, 585 F.3d at 205-06; United States v. Hinckley, 550 F.3d at 935-38; United States v. Lawrance, 548 F.3d 1329, 1332-34 (10th Cir. 2008); United States v. May, 535 F.3d at 919-20.  Therefore, Mr. Ross' *ex post facto* challenge fails.

### 3.  Due Process Clause

Mr. Ross argues that application of SORNA to him violates the Due Process Clause.  Mot. at 35.  Relying on Lambert v. California, 355 U.S. 225 (1957), Mr. Ross contends that where "'wholly passive'" conduct, such as the "'mere failure to register,'" is criminalized, "'actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand.'" Mot. at 35 (quoting Lambert v. California, 355 U.S. at 228-29).  Mr. Ross asserts that he was not informed about his duty to register under SORNA; thus, criminalizing his failure to register without such notice violates the Due Process Clause.  Id.

Sex offenders with current registration requirements — like Mr. Ross — "have notice of state registration requirements; therefore, they are not passive participants unaware of the illegality of failing to register." United States v. Cotton, 2011 WL 180196, at *20.  Mr. Ross "had an affirmative duty to register under state law." Id.  Indeed, upon his release from jail, he was given a notice explaining his duty to register, and he signed the notice acknowledging his duty to register as a sex offender for ten years.  See Opp. at 1-2.  This Court agrees with the

courts that "have consistently held that a defendant's knowledge of his or her duty to register as a sex offender pursuant to state law satisfies the knowledge requirement under SORNA." United States v. Cotton, 2011 WL 180196, at *20 (citing United States v. May, 535 F.3d at 921; United States v. Hinckley, 550 F.3d at 938; United States v. Shenandoah, 572 F. Supp. 2d 566, 580 (M.D. Pa. 2008) (citing cases), aff'd, 595 F.3d 151, 159-60 (3d Cir. 2010)).  Therefore, Mr. Ross' Due Process Clause challenge fails.

### 4.  Commerce Clause

Finally, Mr. Ross argues that SORNA's penalty provision, 18 U.S.C. § 2250(a), is an unlawful exercise of federal power under the Commerce Clause.  Mot. at 36.  The Court agrees with "every . . . circuit that has examined the issue in concluding that § 2250 is a legitimate exercise of congressional Commerce Clause authority."  United States v. Guzman, 591 F.3d 83, 90 (2d Cir. 2010); see United States v. George, 625 F.3d 1124, 1130 (9th Cir. 2010); United States v. Whaley, 577 F.3d at 258-61; United States v. Gould, 568 F.3d at 470-75; United States v. Ambert, 561 F.3d at 1210-12; United States v. Hinckley, 550 F.3d at 940; United States v. May, 535 F.3d at 921-22; see also United States v. Cotton, 2011 WL 180196, at *21.

### IV.  CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the indictment [Dkt. No. 8] will be DENIED.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN

DATE:  April 19, 2011                          United States District Judge